**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

```
-------------------------------------------------------------x
                                    :   Chapter 11
In re:                              :   Subchapter V
                                    :
BOSTON HARBOR DISTILLERY, LLC.      :   Case No. 25-_____ (___)
                                    :
            Debtor.                 :
-------------------------------------------------------------x
```

**DEBTOR'S *EMERGENCY* MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS, AND (B) MAINTAIN SUCH EMPLOYEE BENEFITS PROGRAMS; AND (II) AUTHORIZING AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

By this motion (the "Motion"), the above-captioned debtor and debtor-in-possession, on an emergency basis, seeks entry on an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and, pending a final hearing on the Motion, a final order, substantially in the form attached hereto as **Exhibit B** (the "Final Order", and together with the Interim Order, the "**Proposed Orders**"): (i) authorizing, but not directing, the Debtor to pay, in its sole discretion, certain obligations incurred prepetition, including (a) employee wages, salary and related obligations, (b) reimbursable business expenses, (c) employee medical expenses, (d) certain administrative plan payments, (e) payroll and other withholding tax obligations, and (f) other prepetition employee-related obligations (collectively, the "Employee Obligations"); (ii) authorizing, but not directing the Debtor to maintain and continue to honor their employee-related practices, programs and policies as are set forth in further detail below (collectively, the "Employee Benefit Programs"); and (iii) authorizing and directing the Debtor's banks to receive, process, honor and pay all checks presented for payment or electronic payment requests from the Debtor's

accounts, and granting authority to the Debtor to reissue any dishonored checks, relating to the

Employee Obligations.  In support of the Motion, the Debtor, respectfully represents as follows:

## BACKGROUND

### General

1.      On the date hereof (the "Petition Date"), the Debtor commenced a voluntary case

under Subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")

in this Court.  The Debtor continues to operate its business and manage its properties as debtor in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### The Debtor's Business

2.      BHD was originally founded in 2012 as Port Norfolk Distillery, LLC, later

changing its name to Boston Harbor Distillery.

3.      BHD operates a distillery and event space located at 12R Ericcson Street,

Dorchester, MA (the "Facility").  BHD opened the Facility in June 2015. There, BHD creates

proprietary craft spirits that intergrate rich history, distinctive experiences and beverage culture

into each bottle it produces.

4.      At the Facility, BHD operates a world-class distillery where it distills and houses

hundreds of barrels of whiskey varieties in its bonded barrel storage warehouse, along with small

batch gin, rum, decadent liqueurs and distilled beer from Sam Adams.

5.      The Facility also serves as a function space for private events and live art and

music performances open to the general public, a tasting room, and cocktail lounge. BHD also

operates a retail store at the Facility selling spirits and branded merchandise to the general

public.

6.      Additional information regarding the Debtor's business, capital structure, and the circumstances leading to this chapter 11 filing is set forth in more detail in the *Declaration of Rhonda Kallman in Support of First Day Motions* (the "First Day Declaration"), which is incorporated herein by reference and filed contemporaneously herewith.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested here are sections 105(a), 363(b), 503(b), 507(a)(4) and 507(a)(8) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## RELIEF REQUESTED

9.      The Debtor requests entry of the Interim Order substantially in the form attached hereto as **Exhibit A** and, pending a final hearing on the Motion, a Final Order final order, substantially in the form attached hereto as **Exhibit B** (i) authorizing, but not directing, the Debtor to pay, in its sole discretion, certain obligations incurred prepetition, including (a) employee wages, salary and related obligations, (b) reimbursable business expenses, (c) employee medical expenses, (d) certain administrative plan payments, (e) payroll and other withholding tax obligations, and (f) other prepetition employee-related obligations (collectively, the "Employee Obligations"); (ii) authorizing, but not directing the Debtor to maintain and continue to honor their employee-related practices, programs and policies as are set forth in further detail below (collectively, the "Employee Benefit Programs"); and (iii) authorizing and directing the Debtor's banks to receive, process, honor and pay all checks presented for payment or electronic payment requests from the Debtor's accounts, and granting authority to the Debtor to reissue any dishonored checks, relating to the Employee Obligations.

A.    **Debtor's Employee Obligations**

10.    As of the Petition Date, the Debtor employs 4 full-time employees, and 4 part-time employees, all of whom work in the United States.  None of the Debtor's employees currently are represented by labor unions or covered by a collective bargaining agreement.

11.    The Debtor's employees provide administrative services or work at the Debtor's Facility in support of the Debtor's operations.  The Debtor's ability to operate its business depends on the continued loyalty and morale of its employees.  Any delay in the processing of regular wage or benefits payments to its employees would cause the Debtor and its business irreparable harm.

B.    **Payroll Obligations**

12.    In the ordinary course of business, the Debtor owes wages, salary, and other payments to their employees (the "Payroll Obligations").  The total cost of all wages and benefits payable to the Debtor's employees amounts to approximately $16,000.00 every second week and $16,000.00 every 4th week, plus health insurance of $7,100 payable on the 25th of the month.  In most cases, the Debtor pays the Payroll Obligations through electronic transfer of funds from its operating account at Hingham Institution for Savings, directly to the employees, and to the Health Services Administrator insurance company.  The Debtor's payroll is administered by Paychex.

13.    The Debtor's last payment in respect of its bi-weekly Payroll Obligations was on March 25, 2025 and the next payroll will be made on April 10, 2025 to cover the period from March 23, 2025 through April 5, 2025.   Therefore, due to the timing of the Petition Date, many of the Debtor's employees will be owed wages, salary, and/or other payments for work

performed or reimbursable expenses incurred pre-petition for which the Debtor has not yet remitted payment.

14.     The Debtor's average bi-weekly payroll obligation is approximately $8,471.00. In order to prevent any needless disruption to the Debtor's workforce and operations, the Debtor respectfully requests authority to satisfy all unpaid Payroll Obligations incurred prior to the Petition Date.  The Debtor's estate and creditors should not be prejudiced by such relief because the aggregate payment to or on behalf of any one person will not exceed the section 507(a)(4) priority limit of $15,150.00 per employee.

**C.     Payroll Taxes and Deductions**

15.     The Debtor is required by law to withhold from an employee's wages amounts related to Social Security taxes, Medicare taxes, federal withholding taxes, state withholding taxes and garnishments (the "Withholding Taxes") and to remit the same to the appropriate taxing authorities (the "Taxing Authorities").  The Debtor utilizes a service provided by Paychex to remit Withholding Taxes and to administer garnishments and unemployment compensation.

16.     In addition, the Debtor is required to make matching payments from their own funds on account of social security and Medicare taxes, and to pay, based on a percentage of gross payroll (and subject to state-imposed limits), additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively, the "Employer Payroll Taxes" and, together with the Withholding Taxes, the "Payroll Taxes"). The Debtor's bi-weekly liability for Payroll Taxes as of the Petition Date is approximately $4,742.00.

17.     The Debtor also withholds pre-tax and after-tax deductions payable to certain of the employee benefit plans discussed herein (such as an employee's share of health care benefits, and 401(k) contributions) (collectively, the "Deductions").  While the Debtor withholds the

Payroll Taxes at the time of the applicable pay period, amounts withheld are remitted by the

Debtor to the applicable third party weekly, monthly, or quarterly depending on local laws.

Consequently, as of the Petition Date, the Debtor may be in possession of Payroll Taxes relating

to the prepetition period.[1]  Accordingly, the Debtor requests authority to pay any accrued but

unpaid Payroll Taxes that may relate to the prepetition period as and when they become due in

the ordinary course of the Debtor's business.

**D.**      **Miscellaneous Benefits**

18.      The Debtor also provides employees with other standard benefits, including,

among other benefits, sick-leave pay, holiday pay and vacation time-off (collectively, the

"Miscellaneous Benefits").  These benefits are not only usual and customary in the Debtor's

industry, but also are necessary for the Debtor to retain employees to operate its business.

Accordingly, the Debtor seeks authority to continue to honor outstanding prepetition obligations

with respect to these items in the ordinary course of business and to continue these programs

postpetition in accordance with its terms, as deemed necessary to continue to operate and

preserve value in the exercise of its business judgment.

**E.**      **Expense Reimbursements**

19.      It is vitally important to the operations of the Debtor's business to continue

paying reimbursable business expenses to their employees on a regular basis.  Prepetition, in the

ordinary course of business, the Debtor reimbursed employees for certain business expenses

incurred in the scope of their employment (the "Business Expense Obligations").  Due to the

---

[1]      Importantly, certain of the Withholdings constitute "trust fund" taxes and any claims with respect to the
remaining Withholdings, if left unpaid, would likely constitute priority claims under section 507(a)(8) of the
Bankruptcy Code.  Thus, out of an abundance of caution, the Debtor seeks authority to remit any Withholdings
withheld prepetition.

timing of submission and processing of reimbursement requests, the Debtor is presently unable to precisely state the total of such expenses outstanding as of the Petition Date.

20.     Because of the nature of Business Expense Obligations, it is difficult to determine with precision the aggregate amount of outstanding Business Expense Obligations as of the Petition Date.  However, any outstanding Business Expense Obligations were incurred in connection with each employee's work for the Debtor and in reliance upon the understanding that such expenses would be reimbursed.  Failure to pay such expenses would have a significant adverse impact on employee morale.  It would be inequitable to require employees to bear personal expenses they incurred in furtherance of the Debtor's operations.

21.     Accordingly, to avoid harming the employees who incurred Business Expense Obligations, the Debtor seeks the authority to continue reimbursing the employees for Business Expense Obligations in accordance with prepetition practices and to honor and pay all unpaid Business Expense Obligations.

**F.     Health and Welfare Benefits**

22.     The Debtor's employees are provided with a range of health benefits that are comparable to those offered at similar organizations.  The Debtor's various employee benefit plans and policies can be divided into the following categories (collectively, the "Health and Welfare Benefits"):

**a.     Medical and Prescription Drug Plan**

23.     The Debtor contracts with various health insurance providers and its employees can elect one health insurance plan each year. In addition, employees make payments toward deductibles pursuant to the terms and conditions of the applicable medical plans and also make

co-insurance payments.  As of the Petition Date, the Debtor does not believe that it has any

outstanding liability on account of these medical plans.

### b.      Dental Plan

24.      The Debtor also provides eligible employees with the option to select dental

coverage for themselves and their dependents.  Covered employees contribute annually toward

this coverage.  The Debtor does not contribute any amounts toward dental coverage for its

employees.  As of the Petition Date, the Debtor does not believe that it has any outstanding

liability on account of the dental coverage.

25.

### c.      Life Insurance

26.      The Debtor maintains basic life coverage for eligible employees (the "Life

Insurance").  As of the Petition Date, the Debtor does not believe it has any outstanding liability

on account of Life Insurance.

### d.      Workers' Compensation

27.      The Debtor is required to maintain and to provide its employees with workers'

compensation coverage for claims arising from or related to their employment with the Debtor

(the "Workers' Compensation Program").

28.      Because the Workers' Compensation Program is essential to the continued

operation of the Debtor's business, the Debtor requests authority to pay any and all amounts due

and owing with respect to its Workers' Compensation Program, and maintain and continue

prepetition practices with respect to the Workers' Compensation Program, including, among

other things, allowing workers' compensation claimants, to the extent they hold valid workers'

compensation claims, to proceed with their claims directly against the insurance carriers under

the applicable insurance policy or program.

**G.      401(k) Plan**

29.      The Debtor maintains a retirement and savings plan pursuant to section 401 of the

Internal Revenue Code, which is comprised of a 401(k) contribution plan (the "401(k) Plan").

Through automatic payroll deductions, participating employees can contribute a portion of their

wages on a pre-tax or post-tax basis into the 401(k) Plan.  Contributions to the 401(k) Plan are

held in trust and are administered by Paychex Pooled Employer 401(k) Plan.  To the extent the

Debtor has withheld amounts from their employees' wages for contribution to the 401(k) Plan,

the Debtor respectfully submits that those amounts are not property of the Debtor's estate and

should be remitted to the 401(k) Plan.  The Debtor also seeks authority to continue to make

contributions to the 401(k) Plan pursuant to past practice during the pendency of this case

consistent with the ordinary course of business.


**H.      Banks and Payroll Accounts**

30.      The Debtor also requests that the Court: (a) authorize and direct any and all banks

and financial institutions with which the Debtor maintains payroll or other accounts from which

the Debtor makes payments related to the Employee Obligations (the "Banks") to receive,

process, honor and pay all checks drawn on payroll, benefit, and general disbursement accounts

and fund transfers on account of the Employee Obligations, whether presented before or after the

Petition Date, provided that sufficient funds are on deposit in the applicable account to cover any

such payment and the Debtor identifies the applicable checks that have been issued, but not yet

processed, attributable to Employee Obligations; and (b) authorize the Debtor to issue new post-

petition checks or effect new post-petition fund transfers on account of the Employee

Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or

rejected.  Such relief is integral to implementing the relief sought by this motion.

## BASIS FOR THE RELIEF REQUESTED

### I.    Cause Exists to Authorize Payment of Employee Obligations

31.    Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, claims against the

Debtor for "wages, salaries, or commissions, including vacation, severance, and sick leave pay"

earned within 180 days before the Petition Date are afforded priority unsecured status to the

extent of $15,150.00 per individual.  Similarly, section 507(a)(5) of the Bankruptcy Code

provides that employees' claims for contributions to certain employee benefit plans also are

afforded priority unsecured status to the extent of $15,150.00 per employee covered by such

plan, less any amount paid pursuant to section 507(a)(4).

32.    The Debtor believes that substantially all, if not all, of the Employee Obligations

relating to the period prior to the Petition Date constitute priority claims under sections 507(a)(4)

or (a)(5) of the Bankruptcy Code.[2]  As priority claims, these obligations must be paid in full

before any general unsecured obligations of the Debtor may be satisfied unless otherwise ordered

by the Court.  Accordingly, the relief requested may affect only the timing of the payment of

these priority obligations and will not prejudice the rights of general unsecured creditors or other

parties in interest.  Courts have recognized future priority status as a valid basis for allowing the

payment of wage claims arising prepetition.  *See, e.g., In re Braniff, Inc.*, 218 B.R. 628, 633

---

[2]    The Debtor does not believe they owe any employee more than $15,150.00 on account of Employee
Obligations.  However, to the extent the Debtor owes any employee more than $15,150.00, the Debtor only seeks
authority to pay up $15,150.00 on account of such obligations under the Interim Order, with any further amounts be
paid in accordance with the Final Order.

(Bankr. M.D. Fla. 1998) (explaining that prepetition wage and wage-related claims are often

allowed to be paid post-petition where such wages are subject to priority because "in all but the

direst of circumstances, the Debtor will ultimately pay the pre-petition wages because of their

very high priority and, therefore, the court authorizes their payment early in the case rather than

requiring that the employees wait for payment at the end of the case").  The Debtor respectfully

submits that granting the relief requested would not adversely affect the Debtor's other

unsecured creditors.

33.     Furthermore, section 363(b)(1) of the Bankruptcy Code provides that, after notice

and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  Section 105(a) of the Bankruptcy Code empowers the Court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title."  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition

debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel

concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming

order authorizing payment of prepetition obligations pursuant to section 363(b) of the

Bankruptcy Code); *see also, In re Lehigh & New England Railway Co.,* 657 F.2d 570, 581 (3d

Cir. 1981) (noting that "necessity of payment doctrine … permit[s] immediate payment of claims

of creditors where those creditors will not supply services or material essential to the conduct of

the business until their pre-reorganization claims shall have been paid") (citations and internal

quotations omitted); *In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987).  "[C]ourts have used

its equitable power under section 105(a) of the [Bankruptcy] Code to authorize the payment of

pre-petition claims when such payment is deemed necessary to the survival of a debtor."  *In re

Just for Feet*, 242 B.R. 821, 824 (D. Del. 1999); *see also In re Boston & Maine Corp.,* 634 F.2d

1359, 1382 (1st Cir. 1980) (recognizing, in the railroad reorganization context, the existence of

judicial authority to authorize trustees in reorganization cases to pay claims where such payment

is necessary for the railroad's continued ability to operate and reorganize).

34.     Additionally, federal courts consistently have permitted postpetition payment of

prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for

the benefit of all creditors.  *See, e.g., Miltenberger v. Logansport Ry. Co.,* 106 U.S. 286, 312

(1882) (payment of pre-receivership claim permitted to prevent "stoppage of [crucial] business

relations"); *Dudley v. Mealey,* 147 F.2d 268 (2d Cir. 1945) (Hand, J.), cert. denied, 325 U.S. 873

(1945) (extending necessity doctrine for payment of prepetition claims beyond railroad cases); *In*

*re Lehigh & N.E.R. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (providing that if payment of

prepetition claim is essential to continued operation of business during restructuring, then

payment may be authorized "even if it is made out of corpus"); *In re Boston & Me. Corp.,* 634

F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize

trustees to pay claims for goods and services that are indispensably necessary to debtors'

continued operation); *In re Payless Cashways, Inc.,* 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001)

(finding that various courts have permitted debtors-in possession to pay prepetition debts on

grounds that payment of such claims was necessary to effectuate a successful restructuring).

35.     The Debtor's employees are among their most valuable assets and are absolutely

vital to the Debtor's restructuring efforts. It is imperative that employee morale be maintained

and that the Debtor has the authority to ensure that the Debtor's employees do not unduly suffer

as a consequence of the commencement of this chapter 11 case.  Indeed, in the absence of

granting the relief requested herein, the employees will suffer undue economic hardship and, in

many instances, serious financial difficulties, as the amounts in question are needed to enable

certain of the employees to meet its own personal financial obligations.  Without the requested

relief, the stability of the Debtor will be irreparably undermined by the distinct possibility that

otherwise loyal employees will seek other employment alternatives.  In addition, it would be

inequitable to require the Debtor's employees to personally bear the cost of any Business

Expense Obligation they incurred prepetition, for the benefit of the Debtor, with the

understanding that they would be reimbursed.

36.     Accordingly, continued payment, without interruption, of the Employee

Obligations is necessary and essential and will assure a smooth transition into chapter 11.

Indeed, if the relief requested herein is not granted, the Debtor's business operations will suffer,

to the detriment and prejudice of all parties in interest. Courts in this district and others within

the First Circuit have granted relief similar to that requested in this Motion.  *See, e.g., In re*

*Wachusett Ventures, LLC,* Case No. 18-11053 (Bankr. D. Mass. March 28, 2018) [Docket No.

60]; *In re LRGHealthcare¸* Case No. 20-10892 (MAF) (Bankr. D. N.H. Oct. 23, 2020) [Docket

No. 96].


**J.      Cause Exists to Authorize Payment of Payroll Taxes**

37.     In addition, the payment of the Payroll Taxes will not unduly prejudice other

creditors of the Debtor's estates.  As an initial matter, most, if not all, of the Payroll Taxes are

afforded priority status under section 507(a)(8) of the Bankruptcy Code.  These include

unsecured claims of governmental units for "a tax on or measured by income or gross receipts

for a taxable year ending on or before [the Petition Date]," 11 U.S.C. § 507(a)(8)(A), or "a tax

required to be collected or withheld and for which the debtor is liable in whatever capacity."  11

U.S.C. § 507(a)(8)(C).  Accordingly, as priority claims, many of such prepetition Payroll Taxes

must be paid in full before any general unsecured obligations of the Debtor may be satisfied.

13

38.     Moreover, the portion of the Payroll Taxes withheld from wages on behalf of the
applicable Taxing Authority is held in trust by the Debtor.  As such, these taxes do not constitute
property of the Debtor's estates pursuant to section 541 of the Bankruptcy Code.  *See Begier v.
IRS*, 496 U.S. 53, 65 (1990) (taxes such as excise taxes, FICA taxes and withholding taxes are
property held by Debtors in trust for another and, as such, do not constitute property of estate).
As a consequence, the Debtor does not have an equitable interest in such Payroll Taxes, and
assuming they could be adequately identified and traced, such amounts would not constitute
property of the Debtor's estates and would not be subject to the automatic stay.  *See City of
Farrell v. Sharon Steel Corp*., 41 F.3d 92, 95-96 (3d Cir. 1994).  To the extent the Payroll Taxes
are not property of the Debtor's estates, these funds are not available for the satisfaction of
creditors' claims.  The Debtor, therefore, should be permitted to remit such funds to the Taxing
Authorities as they come due.

39.     Finally, many federal, state, and local statutes impose personal liability on the
officers and directors for certain taxes owed by such entities.  Thus, to the extent that the relevant
Payroll Taxes remain unpaid by the Debtor, the Debtor's directors, officers, and other executives
may be subject to lawsuits during the pendency of these chapter 11 cases.  Any such litigation
(and the ensuing potential liability) will inevitably distract the Debtor and its employees from
devoting their full attention to the Debtor's business and the orderly administration of these
chapter 11 cases.  The Debtor believes that this could materially and adversely affect its ability to
operate in the ordinary course of business and to administer these chapter 11 cases, with resulting
detriment to all parties in interest.  The payment of the Debtor's prepetition Payroll Taxes will
eliminate unnecessary penalties and business expenses, will forestall certain potential actions

against the Debtor's directors and officers, and will contribute to the preservation of the Debtor's

enterprise value.

**K.**     **Administering Payroll and Employment Obligations**

40.     In addition, the Debtor believes it is necessary to continue payment of

administrative fees to the administrators of the Employee Obligations.  Without the continued

services of these administrators, the Debtor would be unable to continue to honor the Employee

Obligations in an efficient and cost-effective manner.  Given the necessity of administering the

payroll and administering the Employee Obligations, the Debtor respectfully submits that this

relief is necessary and warranted in this chapter 11 case.

**L.**     **Authorization for Banks**

41.     The Debtor requests that the Court authorize and direct the Banks on which

checks are drawn or electronic funds are transferred with respect to the Employee Obligations to

receive, process, honor, and pay, to the extent of funds on deposit, any and all such checks or

electronic transfers, whether such checks or transfers were issued before or after the Petition

Date, upon the receipt by each such bank of notice of such authorization without further order of

the Court.

42.     Further, the Debtor also requests that the Court authorize and direct the Banks to

rely on the representations of the Debtor as to which checks are issued and authorized to be paid

in accordance with this Motion without any duty of further inquiry and without liability for

following the Debtor's instructions. Given the necessity of paying the Employee Obligations, the

Debtor respectfully submits that this relief is necessary and warranted.

## REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

43.     Bankruptcy Rule 6003 provides that to the extent relief is necessary to avoid

immediate and irreparable harm, a bankruptcy court may approve a motion to "pay all or part of

a claim that arose before the filing of the petition" prior to twenty-one (21) days after the Petition

Date.  FED. R. BANKR. P. 6003.  As described herein, the Debtor's estate would suffer immediate

and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtor

submits that Bankruptcy Rule 6003 has been satisfied.

### REQUEST FOR BANKRUPTCY RULE 6004 WAIVER

44.     The Debtor requests a waiver of the notice requirements under Bankruptcy Rule

6004(a) and any stay of the effectiveness of the order approving this Motion under Bankruptcy

Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "an order authorizing the use, sale, or lease

of property other than cash collateral is stayed until the expiration of 14 days after entry of the

order, unless the court orders otherwise."  FED. R. BANKR. P. 6004(h).  The Debtor submits that

ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule

6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay

applies.

### RESERVATION OF RIGHTS

45.     Nothing contained herein is intended or should be construed as an admission of

the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim,

or an approval or assumption of any agreement, contract, or lease under section 365 of the

Bankruptcy Code.

### NOTICE

46.     No trustee, examiner, or creditors' committee has been appointed in this chapter

11 case.  Notice of this Motion has be given to: (i) the Office of the United States Trustee for the

District of Massachusetts; (ii) the holders of the twenty (20) largest unsecured claims against the

Debtor (on a consolidated basis); (iii) the Office of the Attorney General of Massachusetts; (iv)

the Office of the Massachusetts Secretary of State; (v) the Massachusetts State Treasury; (vi)  the

Internal Revenue Service; (vii) the Banks; and (viii) all parties who have requested notice in

these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtor respectfully submits that

no further notice of this Motion is required.

## **NO PRIOR REQUEST**

47.      No previous request for the relief sought herein has been made by the Debtor to this

or any other court.

**WHEREFORE**, the Debtor respectfully requests entry of an order granting the relief

requested herein and such other and further relief as is just and proper.

<div style="margin-left:40%">

Respectfully submitted,

BOSTON HARBOR DISTILLERY, LLC,
By its proposed counsel,

</div>

March 31, 2025

<div style="margin-left:40%">

/s/ Jesse I. Redlener
Jesse I. Redlener (BBO #646851)
Lee A. Harrington (BBO #643932)
ASCENDANT LAW GROUP LLC
2 Dundee Park Drive, Suite 102
Andover, MA 01810
Phone: (978) 409-2038
jr@ascendantlawgroup.com
lh@ascendantlawgroup.com

*Proposed Counsel to the Debtor*

</div>

17

**<u>EXHIBIT A</u>**

**PROPOSED INTERIM ORDER**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Eastern Division)**

---------------------------------------------------------------x
                :  **Chapter 11**

**In re:**             :  **Subchapter V**
                :

**BOSTON HARBOR DISTILLERY, LLC.**  :  **Case No. 25-_____ (___)**
                :

      **Debtor.**        :
---------------------------------------------------------------x

**INTERIM ORDER (A) AUTHORIZING DEBTOR TO
(I) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND
(II) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER
EMPLOYEE RELATED PROGRAMS AND (B) AUTHORIZING
AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR
<u>AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS</u>**

Upon the motion (the "<u>Motion</u>")[3] of the Debtor for entry of an order on an interim basis (i) authorizing, but not directing, the Debtor to pay, in its sole discretion, certain obligations incurred prepetition, including (a) employee wages, salary and related obligations, (b) reimbursable business expenses, (c) employee medical expenses, (d) certain administrative plan payments, (e) payroll and other withholding tax obligations, and (f) other prepetition employee-related obligations (collectively, the "<u>Employee Obligations</u>"); (ii) authorizing, but not directing the Debtor to maintain and continue to honor their employee-related practices, programs and policies as are set forth in further detail below (collectively, the "<u>Employee Benefit Programs</u>"); and (iii) authorizing and directing the Debtor's banks to receive, process, honor and pay all checks presented for payment or electronic payment requests from the Debtor's accounts, and granting authority to the Debtor to reissue any dishonored checks, relating to the Employee Obligations; all

---

[3]     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as provided herein.

2.      The Debtor is authorized, but not directed, to pay prepetition claims, to honor obligations, and continue programs, in the ordinary course of business, relating to (a) Payroll Obligations, (b) Payroll Taxes and Deductions, (c) Miscellaneous Benefits, (d) Business Expense Obligations, (e) Health and Welfare Benefits, and (f) the 401(k) Plan (collectively, the "Employee Obligations"); provided, however, that the Debtor shall not make any payment on account of prepetition Payroll Obligations in excess of $15,150 without further order of this Court.

3.      The Debtor is authorized, but not directed, to continue to honor the Employee Benefit Programs and their respective practices, programs, and policies with respect to its employees as such practices, programs, and policies were in effect as of the Petition Date, including the Employee Obligations.

4.      The Debtor is authorized, but not directed, to pay any and all costs in connection with maintaining administration or paying third parties to maintain, administer, and provide recordkeeping relating to the Employee Obligations that may be outstanding as of the Petition Date in the ordinary course of business.

5.      Credit card companies providing services to the Debtor are authorized and directed to perform its services as such have normally and customarily been performed prior to the Petition Date.

6.      Nothing in this Interim Order or the Motion shall be construed as prejudicing any rights the Debtor may have to dispute or contest the amount of or basis for any claims asserted against the Debtor arising in connection with the Employee Obligations or as an admission as to the validity or priority of any claim against the Debtor.

7.      Nothing in the Motion or this Interim Order shall be deemed to (a) authorize the payment of any amounts that may be subject to section 503(c) of the Bankruptcy Code or (b) violate or permit a violation of section 503(c) of the Bankruptcy Code.

8.      Nothing in the Motion or this Interim Order shall be deemed or construed as an approval of an assumption or rejection of any contract pursuant to section 365 of the Bankruptcy Code and all such rights are reserved.  Any party receiving payment from the Debtor is authorized and directed to rely upon the representations of the Debtor as to which payments are authorized by this Interim Order.  The Banks on which checks were drawn or electronic payment requests made in payment of the obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Banks are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

9.      The final hearing, if required, to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on _____, 2025 at _:_ a.m. / p.m. (Eastern Time); and any objection to entry of such order shall be in writing, filed with this Court, and served upon the parties noticed with the Motion, in each case so as to be received no later than _____, 2024 at 4:00 p.m.  If no such objection is filed to the Motion in accordance with this provision, this Court may enter the relief requested herein on a final basis without further notice or hearing.

10.     The requirements as set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waive.

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice or otherwise deemed waived.

12.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.


Dated: _____, 2025
       Boston, Massachusetts


                              _____
                              UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**PROPOSED FINAL ORDER**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

```
-------------------------------------------------------------x
                                        :   Chapter 11
In re:                                  :   Subchapter V
                                        :
BOSTON HARBOR DISTILLERY, LLC.          :   Case No. 25-_____ (___)
                                        :
        Debtor.                         :
-------------------------------------------------------------x
```

**FINAL ORDER (A) AUTHORIZING DEBTOR TO**
**(I) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND**
**(II) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER**
**EMPLOYEE RELATED PROGRAMS AND (B) AUTHORIZING**
**AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR**
**AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Upon the motion (the "Motion")[1] of the Debtor for entry of a final order, (i) authorizing, but not directing, the Debtor to pay, in its sole discretion, certain obligations incurred prepetition, including (a) employee wages, salary and related obligations, (b) reimbursable business expenses, (c) employee medical expenses, (d) certain administrative plan payments, (e) payroll and other withholding tax obligations, and (f) other prepetition employee-related obligations (collectively, the "Employee Obligations"); (ii) authorizing, but not directing the Debtor to maintain and continue to honor their employee-related practices, programs and policies as are set forth in further detail below (collectively, the "Employee Benefit Programs"); and (iii) authorizing and directing the Debtor's banks to receive, process, honor and pay all checks presented for payment or electronic payment requests from the Debtor's accounts, and granting authority to the Debtor to reissue any dishonored checks, relating to the Employee Obligations; all as more fully set forth in

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction

to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and

consideration of the Motion and the relief requested being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided under the particular circumstances, and

it appearing that no other or further notice need be provided; and the Court having determined that

the relief sought in the Motion is in the best interests of the Debtor, its creditors and all parties in

interest; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and upon all of the proceedings had before the

Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED

THAT:

14.     The Motion is GRANTED on a final basis as provided herein.

15.     The Debtor is authorized, but not directed, to pay prepetition claims, to honor

obligations, and continue programs, in the ordinary course of business, relating to (a) Payroll

Obligations, (b) Payroll Taxes and Deductions, (c) Miscellaneous Benefits, (d) Business Expense

Obligations, (e) Health and Welfare Benefits, and (f) the 401(k) Plan (collectively, the "Employee

Obligations"); provided, however, that the Debtor shall not make any payment on account of

prepetition Payroll Obligations in excess of $15,150 without further order of this Court.

16.     The Debtor is authorized, but not directed, to continue to honor the Employee

Benefit Programs and their respective practices, programs, and policies with respect to its

employees as such practices, programs, and policies were in effect as of the Petition Date,

including the Employee Obligations.

17.     The Debtor is authorized, but not directed, to pay any and all costs in connection with maintaining administration or paying third parties to maintain, administer, and provide recordkeeping relating to the Employee Obligations that may be outstanding as of the Petition Date in the ordinary course of business.

18.     Credit card companies providing services to the Debtor are authorized and directed to perform its services as such have normally and customarily been performed prior to the Petition Date.

19.     Nothing in this Final Order or the Motion shall be construed as prejudicing any rights the Debtor may have to dispute or contest the amount of or basis for any claims asserted against the Debtor arising in connection with the Employee Obligations or as an admission as to the validity or priority of any claim against the Debtor.

20.     Nothing in the Motion or this Final Order shall be deemed to (a) authorize the payment of any amounts that may be subject to section 503(c) of the Bankruptcy Code or (b) violate or permit a violation of section 503(c) of the Bankruptcy Code.

21.     Nothing in the Motion or this Final Order shall be deemed or construed as an approval of an assumption or rejection of any contract pursuant to section 365 of the Bankruptcy Code and all such rights are reserved.  Any party receiving payment from the Debtor is authorized and directed to rely upon the representations of the Debtor as to which payments are authorized by this Interim Order.  The Banks on which checks were drawn or electronic payment requests made in payment of the obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Banks are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

22.     The requirements as set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waive.

23.     Notice of the Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice or otherwise deemed waived.

24.     The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

25.     This Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: _____, 2025
       Boston, Massachusetts


_____
UNITED STATES BANKRUPTCY JUDGE